ROBERT F. DALTON *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    December 11, 1913. — February 27, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence*, Street railway.

If a passenger properly upon the running board of an open street railway car sees at some distance ahead a tip cart with two horses attached to it and a driver on the seat who can turn the horses quickly if necessary, and the horses are standing at such an angle that unless they are turned the pole of the cart will strike a person on the running board of the car, such passenger, in assuming that the motorman of the car and the driver of the cart each will exercise due care to avoid a collision and remaining where he is until he sees that a collision is probable and then making an unsuccessful attempt to save himself, when he is struck by the pole and injured, is not negligent as matter of law.

TORT for personal injuries sustained by the plaintiff at about one o'clock in the afternoon of May 6, 1911, while he was a passenger on an open electric street railway car of the defendant on Warren Street in that part of Boston called Roxbury.   Writ dated November 9, 1911.

In the Superior Court the case was tried before *Lawton*, J., who at the close of the plaintiff's evidence, which is described in the opinion, ordered a verdict for the defendant.   The plaintiff alleged exceptions.

*G. P. Beckford,* for the plaintiff.

*F. D. Putnam,* for the defendant.

HAMMOND, J.   The plaintiff testified that, when he boarded the car at the Dudley Street terminal, it was full so that he could not get a seat, and therefore he took a position upon the front part of the running board, about opposite the space between the first and second seats; that there was only one man in front of him upon the board; that when the car was on Warren Street "we collided with the bar or the cross-tree of a double tip-cart which

was standing on Warren Street on the side to the right of a trench which was dug in the street just underneath the running-board;" that this cart was being filled "about opposite the end of the trench and was facing in the same general direction as that in which the car was going;" that the cart "was a low sided cart with two horses," and the driver was sitting on the seat; that it stood there with the horses and the pole "kind of angling out towards the car;" that Warren Street is straight, and that he first noticed the team standing there as the car came out of the terminal; that he should say the pole might have been a foot from the car track; that he should think the running board upon which he was standing might hang eighteen inches outside the track; that he did not realize how close the pole was to the track, and never thought about being struck; that he stood on the edge of the running board "holding on with my left hand;" that in his estimation the distance from where he was when he first saw the cart to the place of the collision was "something like one hundred and twenty-five or one hundred and thirty-five feet;" that he had ridden before upon running boards, and that he "noticed nothing out of the ordinary about the speed of the car."

As to the collision, he testified that he saw the man in front of him "kind of getting out of the way, and the pole hit right across his lower shins, and of course struck me right there on the knee bone. Of course I held on as best I could."

Shortly stated, the evidence of the plaintiff tends to show that he, being rightly upon a running board as a passenger, sees some distance away a team consisting of a low sided tip-cart with two horses attached, the horses being so turned as to bring the pole of the cart within striking distance of a passing car; that the driver is upon the seat of the cart, so that the position of the horses can be almost instantly changed. The plaintiff anticipates no collision because on his evidence he has reason to think, until appearances indicate to the contrary, that the motorman and the driver of the cart will each exercise due care to avoid a collision, and that such care will be taken when, as the two vehicles are approaching, the time has come at which the movements of the one should be affected by the movements or presence of the other. Finally, when the plaintiff sees that a collision is probable, he makes an unsuccessful attempt to save himself.

We are of opinion that the questions whether the plaintiff soon enough realized the danger of a collision, whether, when he did realize it, he took reasonable precaution to avoid injury from it, and generally whether he was in the exercise of due care, were for the jury. See *Pomeroy* v. *Boston & Northern Street Railway,* 193 Mass. 507; *Eldredge* v. *Boston Elevated Railway,* 203 Mass. 582. The case is plainly distinguishable from *Heshion* v. *Boston Elevated Railway,* 208 Mass. 117.

The defendant concedes that there was evidence which would have justified a finding that the motorman was negligent. The case should have been submitted to the jury.

*Exceptions sustained.*